AUDIO SYSTEMS, INC., Appellant,

v.

FIRST NATIONAL BANK OF LOUISVILLE and National Semiconductor Corporation, Appellees.

No. 87-CA-777-MR.

Court of Appeals of Kentucky.

July 1, 1988.

Charles M. Pritchett, C. David Redmon, Brian C. Harrison, Louisville, for appellant.

Richard A. Getty, Denise H. McClelland, Frost & Jacobs, Lexington, Clyde Foshee, Jr., Louisville, for appellees.

Before COMBS, McDONALD and WEST, JJ.

McDONALD, Judge:

This case concerns Article 5 of the Uniform Commercial Code, the law dealing with letters of credit. Specifically, the issue is whether the appellee, National Semiconductor Corporation (National Semiconductor), the beneficiary of two standby letters of credit issued by First National Bank of Louisville for its customer, the appellant, Audio Systems, Inc. (Audio Systems), committed fraud in its demand for payment of the letters of credit as contemplated by KRS 355.5–114(2). This action was commenced in the Jefferson Circuit Court by Audio Systems seeking to permanently enjoin First National, pursuant to KRS 355.5–114(2)(b), from honoring National Semiconductor's demand for payment. In a factually detailed and well-reasoned opinion, the circuit court determined that there was no fraud or "fraud in the transaction" and denied Audio Systems' request for a permanent injunction. We affirm.

The relevant facts bearing on the issue raised are somewhat complex. Audio Systems is a Kentucky corporation which was engaged in the business of manufacturing radio and sound systems for motor vehicles. In this pursuit, Audio Systems purchased various items from National Semiconductor, a California-based company which manufactures and distributes certain electronic components. The parties had done business with each other since the early 1980s. Because National Semiconductor was concerned about Audio Systems' ability to pay for its purchases, in early 1985 the parties agreed (1) that Audio Systems would make a full payment in advance of the shipment of any goods, and (2) that Audio Systems would maintain standby letters of credit at least 60 days from expiration. "Cancellation" of the agreement was defined as not having a letter of credit that is more than 60 days from expiration. Pursuant to the agreement, three irrevocable letters of credit were obtained by Audio Systems to which National Semiconductor was the beneficiary.

Sometime after this agreement, the parties modified their payment practices. Because a large number of parts known as NSM 4007 modules were determined to be defective, National Semiconductor allowed Audio Systems to prepay 75% of the amount owed on these parts only instead of 100%. After inspecting each shipment, Audio Systems then had to get permission to return the defective parts. After National Semiconductor received the alleged defective parts, it would inspect and confirm whether a credit would be given.

Thus, in short, each invoice for 4007 modules was 75% paid when issued. However, because the defective modules were not necessarily identified by invoice when returned, there was no practical way for National Semiconductor to match credits for defective parts with specific invoices. Therefore, a running statement was maintained showing prepayments, invoices and credits, and the balance, if any, due and owing.

In September, 1985, Audio Systems went out of business. Its principal secured creditor, First National Bank, took possession of its assets. National Semiconductor and other creditors were informed that it was unlikely that any of the proceeds of the liquidation of the assets would remain for general creditors. At this point National Semiconductor had a balance due, according to their records, of over $70,000. This sum eventually exceeded $90,500. Naturally, it attempted to reduce this loss by drawing on the three letters of credit, the expiration dates for which were September 30, October 31, and November 30, 1985.

The terms of the letters of credit in issue provided that they could be drawn on by National Semiconductor only upon its certification of the following:

The amount of draft hereunder represents an amount due National Semiconductor Corporation by Audio Systems, Inc. (ASI) in payment of invoice for products shipped to ASI or for work in process on custom made parts not paid within 40 days of invoice date(s).

The drafts sent to First National Bank by National Semiconductor were rejected for reasons not relevant to this appeal. The drafts and supporting documentation (invoices totaling $41,872.17 and $41,904.00 respectively) submitted under the remaining two letters of credit were determined by the issuer bank to conform to the letters of credit, and First National notified Audio Systems of its intent to honor the drafts. This litigation ensued.

There is no question that all the invoices accompanying the request for payment on the letters of credit had been partially paid. Under the agreement between the supplier and purchaser, no goods were shipped unless they were partially prepaid. However, in order to obtain the amount believed due from Audio Systems, National Semiconductor admitted representing as unpaid as many invoices as necessary to obtain a total as close to the amount of the letter of credit as possible. In other words, there was no attempt to reconcile specific credits with specific invoices and/or to submit partially paid invoices for payment. National Semiconductor arbitrarily picked invoices for goods shipped to Audio Systems up to the amount believed to be owed.

It is Audio Systems' claim that National Semiconductor's deceptive use of invoices known to be partially paid amounts to a fraudulent submittal, payment for which the trial court should have enjoined.

It is well settled that a beneficiary of a letter of credit must strictly comply with its terms. *Utica Mut. Ins. Co. v. Walker,* Ky.App., 725 S.W.2d 24 (1987). The issuer then has a duty to honor a draft accompanied by documents that comply with the terms of a letter of credit. KRS 355.5-114(1). This duty is relieved if the documents are "forged or fraudulent or there is fraud in the transaction." KRS 355.5-114(2).

The term "fraud in the transaction" has caused considerable confusion and is resorted to by courts to enjoin honor of drafts only "in the most egregious circumstances." D. Liebson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 4.6 at 521 (1983). In *Intraworld Indus., Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 324 (1975), the court held as follows:

[T]he circumstances which will justify an injunction against honor must be narrowly limited to situations of fraud in which the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purpose of the independence of the issuer's obligation would no longer be served. A court of equity has the limited duty of "guaranteeing that [the beneficiary] not be allowed to take unconscientious advantage of the situation and run off with plaintiff's money in a *pro forma* declaration which has *absolutely no basis in fact.*"

Citing *Dynamics Corp. of America v. Citizens and Southern National Bank,* 356 F.Supp. 991, 996 (N.D.Ga.1973).

Utilizing the *Intraworld* standard, the trial court determined that there was "some basis in fact" in National Semiconductor's claim for payment and its "wrongdoing" was not fraudulent as contemplated by the statute. We agree.

It must be remembered that the very purpose for these letters of credit was to protect National Semiconductor for goods shipped to Audio Systems in the event the latter failed to pay. This is evident from Audio Systems' agreement to provide National Semiconductor with "standby" letters of credit, from the contractual dealings between the parties requiring 75% prepayment, and from all the testimony of record.

It is evident from the parties' agreement and manner with one another that the letters of credit were never intended as the primary means to pay for goods shipped but rather were a " 'back up' against customer default on financial or other obligations." *See* J. White and R. Summers, *Uniform Commercial Code* § 18-1 at 709 (2nd Ed., 1980). Because of the prepayment conditions, there would never exist an invoice totally unpaid. Under Audio Sys-

tems' scenario, there would have been no need for the letters of credit unless it was for the unpaid balances due on the invoices. Audio Systems' acting chief financial officer, John McReynolds, testified as follows:

> Q.  Well, let's narrow it down to this case then.  What was your understanding of the purpose of the Letters of Credit in this case?
>
> A.  These were standby Letters of Credit, which are issued exactly for the reason that it states on here; if Audio Systems did not—if ASI [sic] performed and Audio Systems did not pay complete payment, then ... National Semiconductor was to show proof of invoices or whatever that Audio did not pay for, to the bank, present for payment to the bank, and the bank would draw on those standby Letters of Credit and pay National Semiconductor out of Audio's account.
>
> Q.  So, in short then, they were to protect National Semiconductor in the event that Audio Systems failed to pay on their account?
>
> A.  That is correct.

In the hearing before Judge Ewing, Audio Systems' counsel stated that his client didn't doubt National Semiconductor's belief that it was "entitled" to recover a large payment on its account, but that Audio Systems' "quarrel" was in National Semiconductor's "manner" in obtaining it.  Audio Systems thus acknowledges the "basis in fact" of the sums owed under the letters of credit which clearly distinguishes this case from both *Roman Ceramics Corp. v. Peoples Nat. Bank,* 714 F.2d 1207 (3rd Cir.1982), and *Emery–Waterhouse Co. v. R.I. Hosp. Trust Nat. Bank,* 757 F.2d 399 (1st Cir.1985), wherein the beneficiary of the letters of credit had no bona fide claim to payment.  Therefore, we believe the trial court was correct in its determination that there was no fraudulent conduct or fraud in the transaction to require dishonor of the letters of credit.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.